## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERALD GARCIA<br>804 Puma Canyon Lane<br>Glendora, CA 91740<br><br>Plaintiff,<br><br>v.<br><br>SAKS & COMPANY, LLC<br>d/b/a SAKS OFF 5TH and O5 STORES<br>225 Liberty Street, 27th Floor<br>New York, NY 10281<br><br>Defendant. | CIVIL ACTION<br><br>No.: _____<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Gerald Garcia (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Saks & Co., LLC d/b/a Saks Off 5th and O5 Stores, (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e *et. seq.*); Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981); and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC") on or about June 15, 2024. Plaintiff's claims arising under the PHRA for race/national origin discrimination and retaliation all mirror his federal claims arising under the Title VII.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. On or about June 15, 2023, Plaintiff filed a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative remedies before initiating this action by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is an off-price luxury department store chain headquartered in New York City with store locations throughout the world, including locations in King of Prussia, PA, Philadelphia, PA and Plymouth Meeting, PA.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a Hispanic male of Ecuadorian ancestry.

12. Defendant initially hired Plaintiff in or about April 2021 as a Store General Manager for one of its locations in Miami, Florida.

13. On or about April 1, 2022, Defendant's President, Jennifer Drake ("Drake"), promoted Plaintiff to Divisional Vice President ("DVP") for the Mid-Atlantic/Midwest division and employed him in that capacity until unlawfully terminating his employment, discussed *infra*, on or about May 12, 2023.

14. As a DVP, Plaintiff was responsible for overseeing the management of stores within his assigned district.

15. In his role as DVP, Plaintiff worked in a fully remote capacity from his then home office located in King of Prussia, PA.

16. Defendant asked Plaintiff to relocate from Florida to Philadelphia, PA to its benefit, as it was located in the middle of his geographic territory (Pennsylvania to North Carolina) and in close proximity to several stores within Plaintiff's assigned district.

17. Plaintiff's direct supervisor as a DVP was Defendant's Vice President of the Eastern Territory, Robert Gephart ("Gephart").

18. According to Defendant's own website, it purports to be "committed to fostering a culture of inclusivity and belonging where all Associates are valued and accepted for being their authentic selves."

19. However, this "commitment" is not reflected in Defendant's demographic numbers and minority employees are grossly underrepresented in positions of management.

20. For example, and again according to Defendant's own website, white employees make up only 31.8% of Saks OFF 5th Store employees, yet hold 62.9% of Store Manager positions, 70% of Director positions, and 80% of DVP (or higher) positions.

21. Shortly after Plaintiff was promoted, he had effectively turned his district around and by all accounts was a high performing employee. For example:

   a. During executive visits in early December 2022, Drake, Defendant's CEO – Rob Brooks, Chief People Officer – John Mezzo, as well as other executives praised Plaintiff and gave him positive feedback for improving his district, specifically improving store teams and employee relations.

   b. On or about January 20, 2023, Drake thanked Plaintiff for his commitment and extraordinary hard work in supporting all of his teams.

22. However, in his new role, Plaintiff witnessed Gephart engaging in overtly discriminatory employment practices in direct contradiction to federal and state law, as well as Defendant's own proffered "commitment" to creating an inclusive environment.

23. By means of example only, and not intended to be an exhaustive list, Gephart directed Plaintiff to: unfairly target minority employees with selective discipline; give non-

minority employees lenient treatment; and terminate or force out minority employees for blatantly false or irrelevant reasons because they were "not the right fit."

24. By way of further example:

　　a. On or about June 24, 2022, Gephart opposed Plaintiff's action of issuing a coaching to a Caucasian/White District Operations Manager, "TB," who had been under Gephart's supervision for seven (7) years and whom Gephart had promoted to a senior level in June 2022, for unprofessional conduct towards her mostly African-American staff. HR conducted an investigation and supported Plaintiff's decision to issue a coaching to TB. Upon information and belief, TB was eventually terminated, but Gephart brought her back as a District Operations Manager.

　　b. On or about September 2, 2022, Gephart opposed Plaintiff's action of issuing a coaching to a Caucasian/White General Manager at Defendant's Philadelphia location, "BK," who had been under Gephart's supervision for three (3) years and whom Gephart had promoted, for unprofessional conduct towards his mostly African-American staff. HR conducted an investigation and supported Plaintiff's decision to issue a coaching to BK.

　　c. On or about January 27, 2023, Plaintiff asked Gephart if he could interview for an available DVP position in California, to which Gephart denied Plaintiff's request and told him to "not be so emotional."

　　d. On or about February 17, 2023, Gephart directed Plaintiff to "move quickly" with a discipline/coaching process for an African-American/Black manager, "NN,[2]" despite Plaintiff telling him that NN had improved her performance and did not

---

[2] The names of non-party individuals have been abbreviated due to privacy concerns. Their names are known to both Plaintiff and Defendant.

      think any further coaching/discipline was warranted and was contrary to Defendant's policies and procedures. Plaintiff brought this concern to the attention of Jessica Marino ("Marino"), Defendant's Human Resources Director.

e. Gephart promoted Store Director, "SC," a White/Caucasian male, despite having explicit knowledge that SC had open and obvious issues with mistreating Hispanic employees. When Plaintiff questioned SC's promotion given this common knowledge, Gephart brushed it off and merely stated he was "working through it" with SC.

f. On or about March 3, 2023, Gephart directed Plaintiff to administer a Final Written Warning to a multi-racial manager, "KE," for purported "communication" issues. Plaintiff objected, and despite Gephart's adamant insistence that KE be disciplined, Plaintiff again brought this to the attention of Marino, who agreed that discipline was not appropriate for KE. On or about April 14, 2023, Gephart was still upset Plaintiff had not disciplined KE and directed him to follow up again with HR to address "certain noises" coming out of KE's store. Again, HR's investigation found no support for Gephart's request and did not issue any discipline.

g. On or about March 30, 2023, Plaintiff administered a "Note to File," essentially an informal disciplinary warning to TL, a Caucasian Store Director, who had admitted to violating company policy several times. This Note to File was reviewed and approved by Defendant's HR, but Gephart lambasted Plaintiff for issuing this discipline without his [Gephart's] prior approval because he did not want to hold TL accountable.

h. On or about April 27, 2023, Gephart contacted Plaintiff to discuss a White/Caucasian Store Director, "SC," who had been under HR investigation for

being condescending and disrespectful to store employees. Plaintiff and HR agreed that SC should be formally coached to address the multiple employee complaints about her behavior. Gephart did not support coaching SC and pushed back against Plaintiff (and HR) by stating that SC was "really good," an "amazing operator" and had "great potential."

i.  On or about March 2, 2023, Plaintiff issued an African American/Black Assistant Store Director, "CC," a Final Written Warning. Despite this, Gephart pushed Plaintiff to increase the level of discipline and was adamant that Plaintiff should terminate CC. Plaintiff resisted and told Gephart that they had to follow Defendant's progressive discipline practice (as they had done for other White/Caucasian employees) and was not comfortable terminating CC at that time.

j.  On or about May 5, 2023, during a Touch Base meeting with Gephart, Plaintiff shared that he had administered a coaching to an African-American Store Director, "KB," for allegedly interacting with a shoplifter who had stolen merchandise from the store. Gephart directed Plaintiff to add irrelevant information and escalate the level of discipline to a more severe Final Warning in an effort to make the incident seem more severe. However, Plaintiff explained that KB was a new Store Director, in the role for only eleven (11) weeks at the time. After Plaintiff investigated the incident, (which did not involve any customer complaints or witness statements) and reviewed inconclusive surveillance footage, decided to coach KB appropriately. Gephart told Plaintiff point blank that he "had to get rid of "KB." Plaintiff again raised his concerns with Marino that Gephart was trying to severely and disparately discipline an African-American Store Director, and Marino

confirmed with Plaintiff that HR did not support or approve Gephart's request and discussed same directly with Gephart.

25. Plaintiff continuously opposed and reported Gephart's aforementioned racially discriminatory conduct to Marino during weekly touch base meetings he had with her.

26. In extremely close proximity to his most recent complaint/opposition of discriminatory conduct, Gephart issued Plaintiff an entirely pretextual Written Warning for alleged substandard job performance on March 30, 2023.

27. By way of example, this Written Warning purported to discipline Plaintiff for:

    a. Not holding NN (African-American/Black) accountable to Gephart's standards;

    b. Nominating an Assistant Store Director, CC (African-American/Black), for a Q4 Recognition Award; \

    c. Presenting minority Store Director candidates who Gephart did not approve of; and

    d. For failing to appreciate "opposing thoughts and opinions" to create a more inclusive environment.

28. Gephart was visibly nervous in administering Plaintiff's aforesaid Written Warning and Plaintiff objected to its contents and refused to sign.

29. After Gephart administered this unwarranted discipline, Plaintiff complained about it to Marino in his next scheduled Touch Base meeting with her the following week. Plaintiff specifically told Marino that the Written Warning was unfair, that it had blindsided him, and that it was in direct retaliation for Plaintiff opposing Gephart's racially discriminatory employment practices.

30. Marino at first told Plaintiff that she agreed with his aforesaid expressed concerns (discussed *supra*) and to "just work through it" but remained silent after Plaintiff implicated Gephart's retaliatory motives.

31. As detailed *supra*, Plaintiff was not dissuaded and continued to oppose/report Gephart's discriminatory employment practices even after receiving this Written Warning, including on, or about, April 27, 2023, and again on, or about, May 5, 2023.

32. On May 2, 2023, Plaintiff reported to Marino that he had been advised of a rumor the previous week that an associate in the Franklin Mills store may have brought a firearm to the store back in January 2023.

33. A few days later, on or about May 11, 2023, Plaintiff participated in a conference call with Gephart, Marino and other members of Defendant's legal and Loss Prevention teams.

34. During this call, Plaintiff relayed that on, or about, April 18, 2023, he had been told by the Assistant Store Director, "CC," that she had heard a rumor that a sales associate had brought a firearm to work in January 2023.

35. Plaintiff further stated that he had immediately followed up on this rumor with the Store Director, BK (White/Caucasian), the same day, who had indicated to Plaintiff that he had also heard the rumor from CC, but that there was no evidence to verify.

36. Plaintiff then directed BK to further investigate the aforesaid rumor with Loss Prevention.

37. BK further investigated the aforesaid rumor and talked to the store's Loss Prevention Supervisor, Jason (LNU), and determined that there was no facts or evidence to support this rumor. BK reported the outcome of his investigation to Plaintiff at their next touch base meeting in or about the following week, and Plaintiff in turn told Marino about the unsubstantiated rumor at their next scheduled meeting on, or about May 5, 2023.

38. The very next day, on or about May 12, 2023, and less than one week after his most recent complaint of discriminatory employment practices, Gephart and Marino terminated

9

Plaintiff's employment via a Zoom call for allegedly not reporting the January 2023 rumor (discussed *supra*) quickly enough.

39. Upon information and belief, CC (African American/Black), and Supervisor, Jason (Mixed-Race), were also terminated for not reporting the aforesaid rumor.

40. Store Director, BK (White/Caucasian), was *not* terminated despite also knowing about the rumor and not reporting it.

41. Immediately after his termination, Plaintiff sent an email to Brooks and Mezzo to outline his concerns about his termination as well as Gephart's discriminatory practices (among other concerns).

42. Thereafter, on or about May 18, 2023, Gina De Savia, Defendant's Human Resources Director West, called Plaintiff and asked if he had contacted an attorney. When Plaintiff answered affirmatively, she directed Plaintiff to have his attorney contact Defendant's in-house counsel and ended the call.

43. Upon information and belief, Plaintiff was replaced by a White/Caucasian employee who was given additional resources and support not offered to Plaintiff.

## COUNT I
## Violations of Title VII
### ([1] Race/National Origin Discrimination and [2] Retaliation)

44. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45. During Plaintiff's employment with Defendant, he was subjected to discrimination through disparate treatment, discipline, and termination because of his race and/or actual or perceived national origin/ancestry.

46. Plaintiff also opposed and complained to Defendant's management about Gephart's discriminatory employment practices (discussed *supra*).

47. Instead of investigating Plaintiff's aforesaid complaints, Defendant's management ignored them, left his legitimate concerns unresolved, and subjected him to further hostility and discipline.

48. Following his opposition to and complaints of discriminatory employment practices under Title VII (discussed *supra*), Plaintiff was abruptly terminated for completely pretextual reasons.

49. Based on the foregoing, Plaintiff believes and avers that his race/national origin was a motivating or determinative factor in Defendant's decision to terminate his employment.

50. Plaintiff also believes and therefore avers that he was terminated in retaliation for engaging in protected activity under Title VII.

51. These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

## COUNT II
### Violations of 42 U.S.C. § 1981
([1] Race Discrimination; and [2] Retaliation)

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. During Plaintiff's employment with Defendant, he was subjected to discrimination through disparate treatment, verbal admonishment, and termination because of his race.

54. Plaintiff also opposed and complained to Defendant's management about Gephart's discriminatory employment practices.

55. Instead of investigating Plaintiff's aforesaid complaints, Defendant's management ignored them, left his legitimate concerns unresolved, and subjected him to further hostility and discipline.

56. Following his opposition to and complaints of racially discriminatory employment practices (discussed *supra*), Plaintiff was abruptly terminated for completely pretextual reasons.

57. Based on the foregoing, Plaintiff believes and avers that his race was a motivating or determinative factor in Defendant's decision to terminate his employment.

58. Plaintiff also believes and therefore avers that he was terminated in retaliation for engaging in protected activity under 42 U.S.C. § 1981.

59. These actions as aforesaid constitute unlawful discrimination and retaliation under 42 U.S.C. § 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.        Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: January 26, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Gerald Garcia | : | CIVIL ACTION |
| v. | : | |
| Saks & Company, LLC d/b/a Saks Off 5th and O5 Stores | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| 1/26/2024 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 804 Puma Canyon Lane, Glendora, CA 91740

Address of Defendant: 225 Liberty Street, 27th Floor, New York, NY 10281

Place of Accident, Incident or Transaction: Defendant's place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/26/2024 _____ ARK2484 / 91538
          *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify): _____*

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify): _____*
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 1/26/2024 _____ ARK2484 / 91538
          *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
GARCIA, GERALD

**DEFENDANTS**
SAKS & COMPANY, LLC D/B/A SAKS OFF 5TH AND O5 STORES

**(b)** County of Residence of First Listed Plaintiff: Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

1. U.S. Government Plaintiff
X 3. Federal Question *(U.S. Government Not a Party)*
2. U.S. Government Defendant
4. Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- X 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
Other:
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

X 1 Original Proceeding
2 Removed from State Court
3 Remanded from Appellate Court
4 Reinstated or Reopened
5 Transferred from Another District *(specify)*
6 Multidistrict Litigation - Transfer
8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes  No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 1/26/2024
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

Print | Save As... | Reset