# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GERALD GARCIA**<br>*Plaintiff,*<br><br>v.<br><br>**SAKS & COMPANY, LLC d/b/a SAKS OFF 5TH and O5 STORES,**<br>*Defendant.* | **CIVIL ACTION**<br><br>NO. 24-0395 |

**Baylson, J.**                                                                                                              **July 8, 2025**

## MEMORANDUM RE: SUMMARY JUDGMENT AND MOTION TO STRIKE

Plaintiff Gerald Garcia brings this case against Defendant Saks & Co., LLC d/b/a Saks Off 5th and O5 Stores ("Saks") pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1866, and the Pennsylvania Human Relations Act ("PHRA"). Am. Compl. ¶ 1, ECF 16-1. For the reasons stated below, Saks' Motion for Summary Judgment, ECF 38, is **GRANTED** and Saks' Motion to Strike, ECF 43, is **DENIED as moot**.

## I.    FACTUAL ALLEGATIONS[1]

### A.  Garcia's Hiring and Promotion

Garcia, a 48-year-old Ecuadorian male, was hired by Saks on April 26, 2021, as a store director. Def.'s Statement of Undisputed Material Facts ¶ 5, ECF 38-2 ("DSUMF"); Plf.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 5, ECF 40-2 ("RDSUMF"); Plf.'s Counter Statement of Undisputed Material Facts ¶ 1, ECF 40-1 ("PCSUMF"); Def.'s Resp. to Plf.'s Counter Statement of Undisputed Material Facts, ¶ 1, ECF 41-2 ("RPCSUMF"). Robert Gephart, a Caucasian man, made the decision to hire Garcia. DSUMF ¶ 6; RDSUMF ¶ 6; PCSUMF ¶ 5; RPCSUMF ¶ 2. Garcia's 2021 performance review noted that he exceeded expectations, and he

---

[1] Considering the undisputed facts, and the disputed facts in the light most favorable to the non-movant, the events giving rise to this case are as follows.

received no disciplinary action during the first year and a half of his employment. PCSUMF ¶ 5; RPCSUMF ¶ 5.

In March 2022, Gephart was promoted to Vice President for Saks' East Division. DSUMF ¶ 7; RDSUMF ¶ 7. On or around March 2022, Gephart promoted Garcia to District Vice President ("DVP") for the Mid-Atlantic/Midwest district. DSUMF ¶ 8; RDSUMF ¶ 8. Garcia reported to Gephart in this new role. DSUMF ¶¶ 9–10; RDSUMF ¶¶ 9–10. After Garcia's promotion, he relocated to Pennsylvania and worked remotely. DSUMF ¶ 11; RDSUMF ¶ 11. As DVP, he oversaw store operations within his district, including the hiring, termination, and discipline of store directors. DSUMF ¶¶ 12–14; RDSUMF ¶¶ 12–14.

### B. Saks' Policies

Saks has a written Equal Employment Opportunity Policy that prohibits discrimination. DSUMF ¶ 15; RDSUMF ¶ 15. Saks maintains a policy forbidding retaliation for submitting a complaint of discrimination or participating in an investigation into any such complaint and provides avenues to report such discrimination. DSUMF ¶ 16; RDSUMF ¶ 16.

Saks uses a performance management process to address performance issues through a framework to discuss, acknowledge, and address any performance deficiencies in a constructive manner. DSUMF ¶ 18; RDSUMF ¶ 18. The policy reserves the right to skip steps in the performance management process and to act depending on the nature of the conduct and the employee's history. DSUMF ¶ 19; RDSUMF ¶ 19.

### C. Garcia's Performance

#### 1. Garcia's Communications

In October 2022, Gephart reminded Garcia that all employment offers he made required prior approval. DSUMF ¶ 21; RDSUMF ¶ 21. Gephart provided Garcia with feedback that his

communications needed to be factual and verified and discussed concerns about the accuracy of the information Garcia shared, DSUMF ¶¶ 23, 26; RDSUMF ¶¶ 23, 26.

### 2. Disagreements Between Garcia and Gephart

Garcia asserts that there was disparate treatment of African American employees regarding performance management. PCSUMF ¶ 11. Garcia believes that after he began to question Gephart about the disparate treatment in February and March 2023, he was retaliated against. PCSUMF ¶¶ 13, 25. Gephart acknowledged that he and Garcia disagreed on disciplinary decisions. PCSUMF ¶ 22; RPCSMF ¶ 22.

### 3. Garcia's Written Warning

In March 2023, Gephart concluded that Garcia's performance was unsatisfactory. DSUMF ¶ 27; RDSUMF ¶ 27.[2] Gephart determined that disciplinary action was appropriate and issued a written warning to Garcia on March 30, 2023. DSUMF ¶¶ 28–29; RDSUMF ¶¶ 28–29. The written warning stated that Garcia had deficiencies in his ability to hold his team accountable, the transparency and effectiveness of his communications, his decision-making abilities, and his ability to work with members of management. DSUMF ¶¶ 30–33; RDSUMF ¶¶ 30–33. The written warning also stated that Garcia's performance would be monitored and that further discipline could follow. DSUMF ¶ 34; RDSUMF ¶ 34. Garcia expressed disagreement with the warning to Jessica Marino, Human Resources ("HR") Director. DSUMF ¶ 36; RDSUMF ¶ 36. Marino assured Garcia that he could improve his performance, and Garcia said that he intended to follow up with Gephart about the written warning. DSUMF ¶¶ 37–38; RDSUMF ¶¶ 37–38.

---

[2] The suddenness of this evaluation is disputed. DSUMF ¶ 27; RDSUMF ¶ 27.

### 4. Improper Shoplifter Stop Incident

On March 19, 2023, Garcia learned that a store director had stopped a suspected shoplifter in violation of Saks' policy. DSUMF ¶ 40; RDSUMF ¶ 40. An Asset Protection Manager alerted Garcia, sent him video footage, and asked if he planned to escalate the incident. DSUMF ¶¶ 41, 43; RDSUMF ¶¶ 41, 43. Garcia did not notify Gephart or Marino of the incident but ensured an HR ticket was promptly investigated. DSUMF ¶¶ 44–45; RDSUMF ¶¶ 44–45. One month after the incident, the Manager reminded Garcia to escalate the issue. DSUMF ¶ 46; RDSUMF ¶ 46. Asset Protection ultimately escalated the matter to Gephart. DSUMF ¶ 47; RDSUMF ¶ 47.

### 5. Firearm Incident

On April 18, 2023, Garcia was informed that, three months earlier, a sales associate had brought a firearm into the store. DSUMF ¶¶ 48, 51; RDSUMF ¶¶ 48, 51. Garcia asked the store director to collect statements, DSUMF ¶ 50; RDSUMF ¶ 50, worked with the store director, and directed that an HR Ticket be opened relating to the incident, PCSUMF ¶ 41; RPCSUMF ¶ 41. An HR ticket created that day noted the store was waiting for a statement from Asset Protection. PCSUMF ¶¶ 43–44; RPCSUMF ¶¶ 43–44. Garcia did not speak with Asset Protection about the incident. DSUMF ¶ 52; RDSUMF ¶ 52. DVPs are not required to escalate all rumors and have discretion about whether to do so. PCSUMF ¶ 50; RPCSUMF ¶ 50. On May 5, 2023, Garcia raised the incident with Marino during a scheduled meeting. DSUMF ¶ 55; RDSUMF ¶ 55.

After Saks gathered information about the incident, Saks terminated the employment of certain in-store staff who mishandled the incident. DSUMF ¶ 62; RDSUMF ¶ 62. Additionally, Saks terminated Garcia on May 12, 2023. DSUMF ¶¶ 64, 66; RDSUMF ¶¶ 64, 66.[3]

---

[3] Saks states that Garcia was terminated because he had been made aware of the firearm incident in April but failed to escalate the issue. DSUMF ¶ 64; RDSUMF ¶ 64. Gephart testified

After his termination, Garcia emailed Saks' senior leadership alleging unethical conduct by Gephart and claiming retaliation. DSUMF ¶¶ 60, 67; RDSUMF ¶¶ 60, 67. Saks initiated an investigation, the scope of which is disputed. DSUMF ¶ 71; RDSUMF ¶ 71.

Garcia was replaced by a Caucasian individual. PCSUMF ¶ 61; RPCSUMF ¶ 61. This individual was later placed on written warning for performance issues and was ultimately terminated when her position was eliminated. PCSUMF ¶ 61; RPCSUMF ¶ 61.

## II. PROCEDURAL HISTORY

Garcia filed a Complaint against Saks on January 26, 2024, and filed an Amended Complaint shortly thereafter. ECF 1, 16-1. The Amended Complaint brings claims for violations of Title VII, 42 U.S.C. § 1981, and the PHRA. On September 3, 2024, Saks filed an answer to the Amended Complaint. ECF 20. The parties completed discovery on April 30, 2025. ECF 36. On May 15, 2025, Saks filed a Motion for Summary Judgment. ECF 38. On May 29, 2025, Garcia filed a response. ECF 40. On June 5, 2025, Saks filed a reply. ECF 41. The Court held oral argument on June 24, 2025. ECF 44.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

---

that Garcia would not have been terminated but-for this incident. PCSUMF ¶ 57; RPCSUMF ¶ 57. Saks also asserts that it considered his poor performance history along with the failure to report the improper shoplifter stop. DSUMF ¶ 65; RDSUMF ¶ 65.

5

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-movant bears the burden of proof, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## IV.   DISCUSSION

### A. Race and National Original Discrimination Claims

Garcia brings race and national origin discrimination claims pursuant to Title VII, § 1981, and the PHRA. Am. Compl., ECF 16-1. These claims are analyzed under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) framework. See Butler v. Arctic Glacier USA, 213 F. Supp. 3d 711, 716 (E.D. Pa. 2016) (Beetlestone, J.) (noting that race discrimination claims under Title VII, §1981, and PHRA involve the "same legal analysis"); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). First, the plaintiff must establish a prima facie case of discrimination by showing that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional

6

discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008); Jones, 198 F.3d at 410. Then, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Jones, 198 F.3d at 412 (citing Keller, 130 F.3d at 1108); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)). The burden then shifts back to the plaintiff to show that the employer's stated reason is pretextual. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (citing Burton, 707 F.3d at 426–27).

### 1. Garcia Establishes a Prima Facie Case of Discrimination

Saks argues that Garcia fails to establish a prima facie case of discrimination because he cannot satisfy the fourth element—circumstances that could give rise to an inference of discrimination. ECF 38-1 at 8; ECF 41 at 4–6. However, Garcia satisfies the fourth prong—albeit weakly—because he was replaced by a Caucasian individual, CSUMF ¶ 61; RPCSUMF ¶ 61, which supports an inference of discrimination, Johnson v. Keebler-Sunshine Biscuits, Inc., 214 F. App'x 239, 242 (3d Cir. 2007) (non-precedential) (finding inference of discrimination where a plaintiff was replaced by someone outside the protected class); ECF 40 at 6–7. While these allegations meet the prima facie standard, any inference of discrimination is greatly undermined by the fact that the Caucasian replacement received a written warning for similar performance issues to those that Saks argues Garcia had. PCSUMF ¶ 61; RPCSUMF ¶ 61.

### 2. Saks Articulated a Legitimate, Nondiscriminatory Reason for Terminating Garcia

Saks undoubtedly satisfies the "relatively light" burden of articulating a legitimate, nondiscriminatory reason for Garcia's termination: failure to timely report an in-store firearm incident. Fuentes, 32 F.3d at 763; see Ross v. Gilhuly, 755 F.3d 186, 193–94 (3d Cir. 2014) (holding that "poor job performance" is legitimate reason for termination). Saks argues Garcia was terminated because he learned that a sales associate had brought a firearm into a store months

7

prior and failed to appropriately escalate the issue. DSUMF ¶ 64; RDSUMF ¶ 64. Saks produced "evidence which would allow the trier of fact rationally to conclude that the employment decision" to terminate Garcia was not "motivated by discriminatory animus." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255–57 (1981).

### 3. Garcia Fails to Present Evidence From Which A Reasonable Jury Could Conclude Saks' Proffered Reason For His Termination is Pretext

Garcia fails to present evidence that would allow a reasonable factfinder to conclude that Saks' stated reasons for his termination were pretextual, and thus fails to meet his burden at the final stage of the McDonnell-Douglas test. This warrants a grant of summary judgment in favor of Saks on the race and national origin discrimination claims in Counts I, II, and III.

In sum, there is no genuine dispute of material fact about Saks' reason for terminating Garcia. Garcia attempts to point to his history of satisfactory performance and lack of disciplinary actions to show that Saks' proffered reason for his termination is pretext. But it is undisputed that Garcia had documented performance issues, demonstrated by the March 2023 written warning. DSUMF ¶ 27; RDSUMF ¶ 27. Additionally, Garcia did not make any complaints which constituted protected activities before to Garcia's termination.

The parties' disagreement about whether Garcia did enough in response to the firearm incident is not a genuine dispute of material fact that would establish pretext. Rather, Garcia's actions reflect poor judgment and a lack of urgency in addressing a concerning workplace safety issue. Garcia's evidence fails to show that Saks' stated reason for his termination was so weak, inconsistent, or implausible that a jury could infer it was a cover for unlawful discrimination. See Willis, 808 F.3d at 644–45 (quoting Fuentes, 32 F.3d at 764–65). Nor has Garcia put forth evidence demonstrating that Saks did not follow disciplinary procedures, particularly where its

policy reserves the right to skip steps in the process depending on the conduct at issue. DSUMF ¶ 19; RDSUMF ¶ 19.

### B. Retaliation Claims

To survive summary judgment on retaliation claims under Title VII, § 1981, and the PHRA, a plaintiff must first establish that (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between participation in the protected activity and the adverse employment action. Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995). Here, Garcia fails on the first prong of the test.

Garcia argues that he engaged in protected activity prior to his termination through verbal complaints about the alleged disparate treatment of African American employees. ECF 40 at 9–11; Garcia Dep. 197:15–22, ECF 38-5. Garcia has submitted by affidavit that he complained about discrimination on multiple instances in 2022 and 2023. ECF 40 at 11–14. Even considering Garcia's affidavit,[4] he does not establish that he engaged in a protected activity.[5]

While making informal, verbal complaints to management about acts violating anti-discrimination statutes can constitute protected activity, Abramson v. William Paterson Coll. of

---

[4] "[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment," even when "self-serving." Paladino v. Newsome, 885 F.3d 203, 209 (3d Cir. 2018) (quoting Lupyan v. Corinthian Colls., Inc., 761 F.3d 314, 320, 321 n.2 (3d Cir. 2014)). But self-serving testimonial evidence has its limitations. Daimler v. Moehle, 2025 WL 1355138, at *4 (3d Cir. May 9, 2025) (non-precedential). Conclusory evidence which fails to set "forth specific facts that reveal a genuine issue of material fact" or sets forth only opinions cannot defeat summary judgment. Id. (citing Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012)).

[5] As a preliminary matter, the email that Garcia sent after his termination is not protected activity and, in any case, would fail to establish a causal nexus because it occurred after the termination. See Hernandez v. Wal-Mart, 844 F. App'x 598, 601 (3d Cir. 2021) (non-precedential) (affirming dismissal of retaliation claim where plaintiff failed to show protected activity during her time with the employer and did not file EEOC charge until after termination).

N.J., 260 F.3d 265, 288 (3d Cir. 2001), Garcia has not put forth any evidence indicating that he raised concerns about discrimination. Rather, the alleged remarks that Garcia made to HR, e.g., ECF 40-1 ¶ 17(i), are too vague to constitute protected activity. See Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995) (holding that complaints must be specific enough to notify management of the type of discrimination at issue to constitute "protected activity"). Garcia's retaliation claims under Counts I, II, and III fail to survive summary judgment.

## V.     CONCLUSION

For the reasons stated, Saks' Motion for Summary Judgment, ECF 38, is **GRANTED** and Saks' Motion to Strike, ECF 43, is **DENIED as moot**. An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-395 Garcia v Saks & Co\24-00395 Memo on Summary Judgment.docx